72   649
173s 348)

## B. A. Rice v. Mary A. Gilbert.

1. CORPORATIONS—*Stock of, May be Pledged by Delivery of Certificate.* —Under Sec. 52, Chap. 77 R. S., a delivery of a certificate of stock of a corporation in good faith, to one who advances money on the security thereof, is sufficient to protect the holder as against executions or attachments against the pledgor, to the extent of the debt such stock is delivered to secure, even though there be no transfer in writing or upon the books of the corporation.

Injunction.—Error to the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

N. J. ALDRICH and THEODORE WORCESTER, attorneys for plaintiff in error.

R. G. MONTONY and F. M. ANNIS, attorneys for defendants in error Mary A. Gilbert and Isaac Potter, Adm'rs.

Incorporeal property being incapable of manual delivery

can not be pledged without a written transfer of the title. Debts, negotiable instruments, stock in incorporated companies and choses in action generally are pledged in that mode. Such transfer of title performs the same office that the delivery of possession does in case of a pledge of corporeal property. 2 Thompson's Corporations, Sec. 2622; Brewster v. Hartley, 37 Cal. 15; Wilson v. Little, 2 N. Y. 443; Jewett v. Warren, 12 Mass. 300; Bowman v. Wood, 15 Mass. 534; Dewey v. Bowman, 8 Cal. 145; First Natl. Bank of Mendota v. Smith, 65 Ill. 44.

"Repeated efforts have been made to have certificates of stock declared negotiable paper, but they have been unsuccessful. Such a certificate is not negotiable either in form or character." Hammond v. Hastings, 134 U. S. 403.

A share of stock is defined to be a right which its owner has in the management, profits and ultimate assets of the corporation. Cook on Stock and Stockholders, Sec. 5.

A share of stock is a species of incorporeal personal property assignable at common law. It is neither a chattel nor a chose in action. Lowell on Transfer of Stock, Sec. 9.

"Shares in incorporated companies, such as banks, insurance companies, bridges, turnpikes and railroads have long been considered in this commonwealth as property of a definite and important character, with many of the qualities of visible, tangible personal property, having a value, and as capable of appreciating as vessels or merchandise or other personal chattels. But it is not visible or tangible and therefore not, like merchandise, capable of passing by manual delivery. A nearer analogy perhaps is that of a chose in action capable, like this, of being assigned in equity by a delivery over of the certificate, which is the assignor's muniment of title, with an assignment duly executed, transferring to the assignee all the assignor's right, title and interest." Fisher v. Essex Bank, 5 Gray, 376; Pinkerton v. Railroad Co., 42 N. H. 424; People's Bank v. Gridley, 91 Ill. 457.

"When any officer holding an execution against any one in whose name shares of stock stand on the books of the com-

pany, delivers to a proper officer of a corporation an attested copy of such execution, the property from the moment of such delivery is to be considered as seized on execution, and from that moment the corporation is to be considered as in possession for the sheriff, although the sheriff has not yet the possession of anything representing the property." People v. Goss & P. Mfg. Co. et al., 99 Ill. 364.

"The title to stock is created by registry in the books of the corporation.  The certificate is not the stock itself but only evidence of the ownership of the stock.  It has value only as such evidence, and apart from the shares it represents, it is utterly worthless."  Colton v. Williams, 65 Ill. App. 466.

Even where there was a written declaration attached to the certificate that the stock was thereby pledged for the debt described, an unregistered transfer was held not good against creditors.  Platt v. Hawkins, 43 Conn. 139.

An entry by the clerk of a corporation upon the deed of assignment that it had been received for record was not sufficient to protect the stock from attachment as the property of the assignor.  Northrop v. Newton, etc., Turnpike Co., 3 Conn. 544.

Whether the transfer of the certificate of stock, accompanied by a power of attorney indorsed in blank, carries the full title against outside equities and attaching creditors, is a question concerning which there has been frequent controversy arising chiefly from the construction of statutes, charters and by-laws regulating the transfer.  *  *  * Most States have by statute provided for the transfer of stock on the books of the corporation, or have allowed it to be transferred on the books in a manner prescribed in the charter or by-laws of the corporation.

The courts of the most prominent commercial States, as New York, New Jersey, Pennsylvania and some others, recognizing the importance of making the certificate indorsed in blank as nearly negotiable as possible, have declared that the registry on the books of the company, so provided for by statute, charter, or by-law, is for the company's benefit

alone, and that a blank transfer of a *bona fide* holder for value is good against anybody but the corporation.   18 Am. & Eng. Ency. of Law, 615.

The courts of other States have, however, just as strongly held that a statute, charter, or authorized by-law provision that stock shall only be transferred on the books of the corporation, is to show to all the world where the legal title is, and that therefore an unregistered transfer is not good against creditors or assignor.   Parrott v. Byers, 40 Cal. 614; Weston v. Bear R. & A. W. & M. Co., 5 Cal. 186; 6 Cal. 425; Strout v. Natoma W. & M. Co., 9 Cal. 78; Naglee v. Pacific Wharf Co., 20 Cal. 529; People v. Elmore, 35 Cal. 653; Winter v. Belmont Mining Co., 53 Cal. 428; Rock v. Nichols, 3 Allen, 342; Blanchard v. Dedham G. L. Co., 12 Gray, 213; Marlborough Mfg. Co. v. Smith, 2 Conn. 579; Northrop v. Curtis, 5 Conn. 246; Oxford Turnpike Co. v. Bunnel, 6 Conn. 552; Dutton v. Conn. Bank, 13 Conn. 493; Shipman v. Ætna Insurance Co., 29 Conn. 245.


MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

Mary A. Gilbert and Isaac Potter, as administratrix and administrator of the estate of Horace Gilbert, deceased, exhibited their bill in equity against plaintiff in error and other defendants, to restrain said B. A. Rice from selling thirty shares of the capital stock of the "Old Second National Bank of Aurora," and twenty shares of the capital stock of the "Aurora Silver Plate Manufacturing Company." Plaintiff in error had obtained a judgment by confession against his father, one F. B. Rice, to an amount exceeding $5,000, upon which executions were issued and levied upon the stock in controversy. Said Gilbert and Potter claiming that this stock belonged to, and was the property of the estate of said Horace Gilbert, deceased, filed their bill for an injunction as above stated.

It appears from the evidence that on or about March 15, 1892, said F. B. Rice became indebted to said Horace Gilbert (then in his lifetime, but now deceased), in the sum of

five thousand dollars, and to secure the same said F. B. Rice
executed and delivered to said Horace Gilbert a promissory
note for that sum, bearing said last mentioned date, and
due one day after date with interest at seven per cent per
annum; and that to secure the payment of said note, said
F. B. Rice transferred and delivered to said Gilbert, stock
certificate No. 67 for thirty shares of the capital stock of
Old Second National Bank of Aurora, and also six cer-
tificates covering twenty shares of the capital stock of the
Aurora Silver Plate Manufacturing Company, being the
same stock in controversy in this suit. All of this stock
then stood in the name of said F. B. Rice on the books of
the bank, and the manufacturing company respectively,
and it is not shown, nor is it claimed, that these certificates
of stock were ever indorsed or assigned by said F. B. Rice,
in writing, nor was there ever any transfer made upon the
books of the bank or manufacturing company. The certifi-
cates themselves, however, were delivered to said Horace
Gilbert, and some months before the issue of the executions
above mentioned he had served written notice upon the
bank and the manufacturing company that he held the
stock in controversy as collateral security, and requested
that an assignment or transfer be accordingly made on the
books of the different corporations, showing the fact. This
was never done, and so the matter stood until the death of
said Horace Gilbert, whose administrators held the $5,000
note entirely unpaid, and also held possession of the certifi-
cates of stock, at the time of the issue of the executions in
favor of plaintiff in error.

On a hearing in the court below, on bill, answers of the
several defendants, replications, evidence and proof taken,
a decree was entered finding the equities for the complain-
ants, and enjoining plaintiff in error and the officers hold-
ing the executions, from proceeding with the sale. The
court further found upon the evidence, that there was due
the complainants upon said promissory note, the sum of
$5,300.13, and decreed that unless the defendants, or some
of them, should pay that amount to the complainants within

forty days from the date of the decree, then in default of such payment the stock in controversy, or so much thereof as might be necessary to realize the amount due complainants, and the costs, be sold by the master in chancery to the highest bidder, and that on such sale being made, the master execute assignments of such certificates of stock to the purchasers, and that the bank and manufacturing company (who were parties defendant) should transfer such stock on their respective books. And that out of the proceeds of such sale, the master pay the complainants the amount found due upon said note, with legal interest, and bring the surplus, if any, into court.

Plaintiff in error being dissatisfied with this decree, brings the cause to this court and insists upon a reversal, assigning fourteen different errors. But the principal controversy centers around the contention of plaintiff in error, that because there was no written assignment of the certificates of stock, and no transfers upon the books of the corporations issuing the same, there was no such transfer of the title to the stock as prevented plaintiff in error from levying upon and selling the same as the property of the judgment debtor, F. B. Rice, in whose name the stock stood upon the books of the corporations.

There is no doubt that prior to the amendment of Sec. 52, Chap. 77 of the Revised Statutes, passed in 1883 and in force July 1, 1883, such contention must have prevailed under the law as laid down by the Supreme Court in People's Bank v. Gridley, 91 Ill. 457. But since said amendment, which we think was made for the benefit of pledgees of stock in corporations, we hold, that by its terms, a delivery of the certificates of stock in good faith, to one who advances money on the security thereof, is sufficient to protect the holder as against executions or attachments against the pledgor, to the extent of the debt such stock is delivered to secure, even though there be no transfer in writing or upon the books of the corporation.

It is our duty to give some meaning to this amendment, and unless the construction we have placed upon it be the

correct one, we are at a loss to see what purpose it has accomplished.

If it is to be held notwithstanding the amendment, there must still be a written assignment of the certificates of stock and a formal transfer upon the books of the corporation in order to protect the pledgees, then the amendment is meaningless and amounts to nothing. We are not prepared to so hold.

As the decision of this question disposes practically of the entire controversy in the case, we deem it unnecessary to take up in detail the numerous errors assigned upon the record, because, if the Circuit Court held correctly upon this point there was no error in the other rulings which were dependent thereon.

We are of the opinion the decree was right, and it will be affirmed.