B. A. RICE

*v.*

MARY A. GILBERT *et al.*

*Opinion filed June 18, 1898.*

1. PLEDGE—*incorporeal property may be pledged by written transfer of title.* Incorporeal property, such as negotiable instruments, stock in incorporated companies, and choses in action generally, may be pledged by written transfer of title.

2. CORPORATIONS—*purpose of amendment of 1883 concerning levy of execution on corporate stock.* The purpose of the amendment of section 52 of the act on judgments, decrees and executions, (Laws of 1883, p. 110,) which provides that shares of stock shall not be taken on execution when sold *or pledged* for a valuable consideration, was to make shares of stock as nearly negotiable as possible, and to give more freedom in transfers of stock as collateral security.

3. SAME—*stock may be pledged by delivery of certificate.* As between the parties and as against third persons having actual or constructive notice of the transaction, the delivery of a certificate of stock as collateral security for a loan constitutes a valid pledge of the stock, although the transfer of the title to the pledgee is not made on the books of the corporation.

*Rice* v. *Gilbert,* 72 Ill. App. 649, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

N. J. ALDRICH, (THEODORE WORCESTER, of counsel,) for plaintiff in error.

R. G. MONTONY, and F. M. ANNIS, for defendants in error Mary A. Gilbert and Isaac Potter.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Second District. A suit in equity was begun by Mary A. Gilbert and Isaac Potter, administrators of the estate of Horace Gilbert, deceased, against B. A. Rice, F. B. Rice, the Old Second National Bank of Aurora, the Aurora Silver Plate Manufacturing Company, William Reed, sheriff, and T. Beiver, deputy sheriff, in the circuit court of Kane county. The object of the bill was to restrain the sale on execution of certain shares of stock in the companies named above, as the property of F. B. Rice, on a judgment in a suit wherein B. A. Rice was plaintiff and F. B. Rice was defendant. The complainants allege that Horace Gilbert, in his lifetime, loaned to F. B. Rice the sum of $5000, and that the stock in question was delivered to Gilbert as collateral security for the loan. F. B. Rice answered, denying that Gilbert ever held the stock in pledge. The answer of B. A. Rice also denied that he ever held the stock in pledge, and alleged that the certificates of stock were never assigned or transferred to him. He set up the *bona fides* of his judgments against F. B. Rice and the levies of executions thereunder on the stock. Testimony was taken before the master, and upon such evidence a decree was rendered in favor of complainants, perpetually enjoining the sales unless the defendants should pay complainants the debt of $5000, with interest. An appeal

was taken to the Appellate Court for the Second District, and the decree there affirmed.

The evidence shows that on March 15, 1892, F. B. Rice, who was the father of B. A. Rice, for value received, made and executed a promissory note to Horace Gilbert for $5000, and to secure its payment delivered to him two certificates of stock issued in the name of F. B. Rice,— one for thirty shares of the capital stock of the Old Second National Bank of Aurora, and one for twenty shares of the capital stock of the Aurora Silver Plate Manufacturing Company; that in May, 1894, Gilbert served notice in writing on the two corporations, notifying them that he held the certificates of stock above mentioned as collateral security for the $5000 note, and requested that the same be assigned to him on the books of the companies; that some months afterwards B. A. Rice recovered judgments against F. B. Rice for amounts aggregating over $5000, on which executions were issued and levied, under the statute, upon all of the said shares of stock as the property of the defendant, F. B. Rice. To restrain the sale of the stock upon that levy this suit was brought.

The principal question argued by counsel for plaintiff in error is whether, under section 52 of the act on judgments and decrees, as amended in 1883, (Hurd's Stat. 1889, p. 846,) the delivery of the certificates of stock under the circumstances shown was sufficient, as a pledge of the same, to create a valid lien in favor of Horace Gilbert, as against a subsequent levy by a judgment creditor. That section of the statute is as follows: "The share or interest of a stockholder in any corporation may be taken on execution and sold as hereinafter provided; but in all cases where such share or interest has been sold or pledged in good faith for a valuable consideration, and the certificate thereof has been delivered upon such sale or pledge, such shares or interest shall not be liable to be taken on execution against the vendor or pledgor, except for the excess of the value thereof over and above the sum for

which the same may have been pledged and the certificate thereof delivered."

It is contended on behalf of plaintiff in error that in order to constitute a pledge of stock in a corporation there must be more than a mere delivery of the certificate of stock, and that such acts must be done as will enable the person meant to be secured to have the stock placed in his name on the books of the corporation, and that such transfer by the corporation must be made. There is no little conflict in the decisions as to the effect to be given to the word "pledge." It has been held to apply strictly to corporeal chattels, and it has been doubted whether stocks in corporations were the subjects of pledge, not being capable of manual delivery; but that view is no longer maintained, and the settled law now is that incorporeal property, such as negotiable instruments, stock in incorporated companies and choses in action generally, is capable of being pledged by written transfer of the title. Such transfer of the title performs the same office as the delivery of possession does in case of a pledge of corporeal property. The transfer of the title in writing constitutes the evidence of the pledgee's right of property in the thing pledged. (Jones on Pledges, sec. 153; *Brewster* v. *Hartley*, 37 Cal. 15.) And it seems to be almost the universal decision that, technically speaking, incorporeal property is incapable of being pledged without a written transfer of title or its equivalent. 18 Am. & Eng. Ency. of Law, 608.

But the question here is as to the latitude to be given the phrase "sold or pledged," as found in our statute,— whether it must be confined to absolute sales and technical pledges, or whether it has a broader significance. It is said in Lowell on Transfers of Stock (sec. 53): "Stock can be taken as collateral security for a debt or agreement in any one of four different ways. In the first place, the owner may agree to hold the stock in trust for his creditor; in this case the latter gets no legal right to the

stock at all, but only a claim in equity. Or, secondly, the security may be given by means of a pledge, whereby certain legal rights, sometimes called a special property, pass to the pledgee while the legal title remains in the pledgor. Or, thirdly, by a mortgage; and in this case the legal title passes to the mortgagee, but the mortgagor retains a legal right of defeasance until the time of payment expires, and afterwards an equitable right to redeem, until foreclosure. Or, in the fourth place, the security may be given by means of an absolute conveyance in trust to satisfy the debt, to pay over any surplus to the debtor, who retains in this case nothing but an equitable right in the property."

In later years the law has been generally established that as between the parties the transfer of stock by a delivery of the certificate, with power of attorney or endorsed in blank, passes title without transfer on the books of the company, even when the by-laws of the company provide to the contrary. (18 Am. & Eng. Ency. of Law, 612.) It has even been held that between the parties a mere delivery of a certificate as security vests in the pledgee an equitable title, subject only to the rights of third parties who have acquired them *bona fide.* (Ibid. 611.) As between the parties to the pledge, and the corporation, a different rule prevails, and until the transfer is made on the books of the company a holder of a certificate of stock cannot assert a legal title against the company. (Ibid. 613.) But the delivery of certificates of stock as security, endorsed in blank or with power of attorney, but not transferred on the books of the company, when asserted against the rights of creditors of the pledgor, has given rise to much conflict in decisions. The policy of this State was early defined by chapter 77 of the Revised Statutes, in favor of creditors. Prior to the amendment of section 52, above quoted, it simply provided: "The share or interest of a stockholder in any corporation may be taken on execution, and sold as here-

inafter provided." The case of *People's Bank* v. *Gridley*, 91 Ill. 457, settled the question in this State that as between a vendee or pledgee and a judgment creditor the latter was preferred. Following that decision the statute was amended and its language materially changed, as here shown. There is but one rational conclusion as to the meaning and purpose of that amendment, and that is, that it was to give more commercial freedom to transfers of stock for purposes of collateral security than existed before, and therefore the foundation for the holding in *People's Bank* v. *Gridley*, *supra*, no longer exists. Authorities may be found sustaining the position that a delivery of a certificate of stock as security, endorsed or with power of attorney, but not transferred on the books of the corporation, is not valid against lien creditors of the pledgor, even under the language of the statute; but the current of decisions in the commercial States of the Union is to make shares of stock as nearly negotiable as possible, and we are of the opinion that such was the intention of the legislature in enacting the amendment to section 52, *supra*. The phrase "sold or pledged" should not receive a construction which will include a portion of stock transactions coming under the head of collateral securities, but not others, where there has been a delivery of the stock certificate.

Independently of the views here expressed, the decree of the lower court was correct. As between F. B. Rice and Horace Gilbert the evidence was sufficient to justify the finding that the latter held the certificates of stock as collateral security for the loan. In fact, the pleadings do not deny it. The evidence was also sufficient to sustain the contention of complainants that B. A. Rice had notice, actual or constructive, of the condition of the stock, and from any view of the case defendants in error were entitled to the relief sought.

The decree of the Appellate Court will be affirmed.

*Decree affirmed.*